IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**THELMA MORA,**

      **Plaintiff,**

      vs.                                                 Civ. No. 14-822  KK

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security,**

      **Defendant.**

## **MEMORANDUM OPINION AND ORDER**[1]

**THIS MATTER** is before the Court on Plaintiff's Motion to Reverse and Remand for Rehearing, With Supporting Memorandum ("Motion"), filed on April 24, 2015. (Doc. 18.) The Commissioner of Social Security ("Commissioner") filed a Response on July 31, 2015 (Doc. 22), and Plaintiff filed a Reply on August 28, 2015. (Doc. 25.) Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds the Motion is well taken and is **GRANTED.**

### **I. Standard of Review**

Judicial review in a Social Security appeal is limited in scope by 42 U.S.C. § 405(g) to two inquiries: first, whether substantial evidence supports the Commissioner's final decision[2]; and second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to Magistrate Judge Kirtan Khalsa to conduct any or all proceedings, and to enter an order of judgment, in this case. (Docs. 6, 8.)

[2] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which is generally the ALJ's decision. 20 C.F.R. §§ 404.981, 416.1481. This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Courts must meticulously examine the entire record, but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the court may not reweigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner's] findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. Fed. Aviation Admin.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II. Applicable Law and Sequential Evaluation Process

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act if her "physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any

other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). To qualify for disability insurance benefits, a claimant must establish a severe physical or mental impairment expected to result in death or to last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §423(d)(1)(A); *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993).

When considering a disability application, the Commissioner uses a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show that: (1) she is not engaged in "substantial gainful activity"; *and* (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) her impairment(s) meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i-iv), 416.920(a)(4)(i-iv); *Grogan* 399 F.3d at 1261. If the claimant cannot show that her impairment meets or equals a Listing, but she proves that she is unable to perform her "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering her residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

Although the claimant bears the burden of proving disability in a Social Security case, because such proceedings are nonadversarial, "[t]he ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993); *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006). "This is true

---

[3] 20 C.F.R. pt. 404, subpt. P. app. 1.

3

despite the presence of counsel." *Henrie*, 13 F.3d at 361. "The duty is one of inquiry and factual development," *id.*, "to fully and fairly develop the record as to material issues." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997). This may include, for example, an obligation to obtain pertinent medical records or to order a consultative examination. *Madrid*, 447 F.3d at 791-92. The duty is triggered by "some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation." *Hawkins*, 113 F.3d at 1167.

### III. Background and Procedural Record

Plaintiff Thelma Mora ("Ms. Mora") was born on May 12, 1969. (Tr. 221.[4]) Ms. Mora completed the eleventh grade in 1986. (Tr. 226.) Ms. Mora's work history included manager positions for a check cashing business and an ice cream business, tax preparer, call center customer service representative, and diet technician for a medical facility. (Tr. 237-48.)

On October 18, 2011, Ms. Mora protectively filed[5] an application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, and concurrently filed an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1382(a)(3). (Tr. 184-192, 194-195, 196-201.) Ms. Mora alleged a disability onset date of June 7, 2011, because of depression, migraines, lower back problems, thyroid problems, and high blood pressure. (Tr. 185, 225.) Ms. Mora has not engaged

---

[4] Citations to "Tr." are to the Transcript of the Administrative Record (Doc. 13) that was lodged with the Court on February 20, 2015.

[5] Protective Filing Status is achieved once an individual contacts the Social Security Administration with the positive stated intent of filing for Social Security Disability benefits. The initial contact date is considered a claimant's application date, even if it is earlier than the date on which the Social Security Administration actually receives the completed and signed application. *See* 20 C.F.R. §§ 404.614, 404.630, 416.325, 416.340, 416.345.

4

in substantial gainful activity since her alleged disability onset date. (Tr. 31.) Ms. Mora's date of last insured was December 31, 2016.[6] (Tr. 29.)

Ms. Mora's applications were initially denied on April 19, 2012. (Tr. 87, 88, 119-21, 122-25.) Ms. Mora's applications were denied again at reconsideration on November 28, 2012. (Tr. 89, 90, 91-102, 103-114, 128-30, 132-35.) On December 17, 2012, Ms. Mora requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 136-37.) The ALJ conducted a hearing on August 8, 2013. (Tr. 47-73.) Ms. Mora appeared in person at the hearing with her attorney Aaron Fields. (*Id.*) The ALJ took testimony from Ms. Mora (Tr. 49-69) and an impartial vocational expert ("VE"), Nicole King. (Tr. 69-73.)

On August 23, 2013, the ALJ issued an unfavorable decision. (Tr. 26-40.) At step one, she found that Ms. Mora had not engaged in substantial gainful activity since her alleged onset date. (Tr. 31.) The ALJ therefore proceeded to step two and found that Ms. Mora suffered from the following severe impairments: "degenerative disc disease of the lumbar spine; hypothyroidism; obesity; migraine headaches; and a major depressive disorder." (*Id.*) At step three, the ALJ concluded that Ms. Mora did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 32.)

Because she found that Ms. Mora's impairment did not meet a Listing, the ALJ went on to assess Ms. Mora's RFC, which is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520 (e, f, g), 416 920(a)(4), 416.920 (e, f, g). The ALJ stated that

---

[6] To receive benefits, Ms. Mora must show she was disabled prior to her date of last insured. *See Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1347 (10th Cir. 1990).

> [a]fter careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she can occasionally climb, balance, and stoop; she can never kneel, crouch, or crawl; she is limited to simple decisions with few workplace changes; she can have no contact with the general public and only occasional and superficial contact with co-workers; and she can work on a computer no more than four hours per day.

(Tr. 33.) At step four, the ALJ concluded that Ms. Mora was unable to perform any past relevant work. (Tr. 38.) At step five, the ALJ determined that considering Ms. Mora's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that she could perform. (Tr. 39.)

On July 10, 2014, the Appeals Council issued its decision denying Ms. Mora's request for review and upholding the ALJ's final decision. (Tr. 1-5.) In reviewing her case, the Appeals Council considered additional medical evidence submitted by Attorney Michael Armstrong. (Tr. 5, 589-93, 596, 598-621, 622.) On September 9, 2014, Ms. Mora timely filed the instant action seeking judicial review of the Commissioner's final decision. (Doc. 1.)

## IV.  Analysis

Ms. Mora asserts four arguments in support of reversing and remanding her case, as follows: (1) the ALJ failed to accord the proper weight to the consultative examination by Dr. John Owen as required by SSR 96-6p; (2) the Appeals Council failed to conduct a treating and examining physician analysis of Ms. Mora's mental health records submitted after the hearing and made a part of the record; (3) the ALJ failed to engage in a thorough function-by-function analysis of Ms. Mora's functional limitations and failed to develop the record to clarify ambiguities; and (4) the ALJ's credibility finding was based on an improper assessment of Ms. Mora's obesity and treatment history. (Doc. 18 at 12-25.) Because the Court finds grounds

to remand as discussed below, the Court does not specifically analyze all of Ms. Mora's arguments.

### A.     Ms. Mora's Depression

#### 1.     Robert Sullivan, M.D.

On September 14, 2011, Certified Nurse Practitioner Carol Scott of ABQ Health Partners urged Ms. Mora to establish care with a psychiatrist because of her anxiety and depression. (Tr. 336-38.)  To that end, on October 5, 2011, Ms. Mora presented to Robert Sullivan, M.D., for a psychiatric evaluation.  (Tr. 396, 585.)  She told Dr. Sullivan that she had been working since she was 14 years old, but had stopped working in June 2011 due to decreased mood, difficulty getting out of bed, irritability, decreased energy, crying, decreased cognitive functioning, and anxiety with depression.   (*Id.*)    Dr. Sullivan took a history and prescribed Celexa, an antidepressant, once daily, for eight to twelve months.  (*Id.*)  Ms. Mora saw Dr. Sullivan again on October 17, 2011.  (Tr. 395, 585.)  Dr. Sullivan noted that Ms. Mora discussed her family of origin and her choices in partners through the years, and that she held the opinion that her emotional difficulties were related to a "chemical imbalance" that would get better if the doctors could find the right medication.  (*Id.*)  On December 19, 2011, Dr. Sullivan noted he received a request for records from the Social Security Administration.  (*Id.*)  Dr. Sullivan opined that Ms. Mora was not disabled.  (*Id.*)  He further noted that Ms. Mora's life choices had been "physically and emotionally deleterious," and that she found his impressions, conclusions and recommendations to be of no value.  (*Id.*)  For that reason, Ms. Mora had been lost to follow-up. (*Id.*)

### 2. **John Owen, M.D.**

On March 5, 2012, John Owen, M.D., evaluated Ms. Mora's mental status on behalf of Disability Determination Services. (Tr. 403-06.) Ms. Mora reported, *inter alia*, that she was depressed. (Tr. 403.) She stated that she had been depressed for many years, but it had become much worse in the last year. (*Id.*) Ms. Mora stated she was taking Celexa for her depression. (*Id.*) Dr. Owen took a psychosocial history and questioned Ms. Mora about her daily functioning. (Tr. 403-04.) Dr. Owen performed a mental status exam and noted therein that Ms. Mora's affect was flat and her mood was depressed. (Tr. 404.) Dr. Owen also performed a Mini-Mental State Examination,[7] on which Ms. Mora scored a 30/30. Dr. Owen diagnosed Ms. Mora with major depressive disorder and summarized that

> Ms. Mora said that she primarily cannot work because of her depression. It is difficult for her to focus and concentrate. She has little motivation. She also suffers from panic attacks, migraine headaches and back pain. Ms. Mora has moderate to marked difficulty in regards to social interactions because of her depression.

(Tr. 404.) Dr. Owen then prepared a statement of his opinion regarding Ms. Mora's abilities as follows:

1. Understand and Remember

    A. Detailed or complex instructions: no difficulty
    B. Very short and simple instructions: no difficulty

2. Sustained Concentration and Task Persistence

    A. Ability to carry out instructions: moderate difficulty
    B. Ability to attend and concentrate: moderate/marked difficulty
    C. Ability to work without supervision: moderate difficulty

---

[7] The Mini-Mental State Examination is a method for grading the cognitive state of patients. http://www.minimental.com.

8

  3. Social Interactions

    A. Ability to interact with the public:  moderate/marked difficulty
    B. Ability to interact with co-workers:  moderate/marked difficulty
    C. Ability to interact with supervisors:  moderate/marked difficulty

  4. Adaptation

    A. Ability to adapt to changes in the workplace:  mild difficulty
    B. Ability to use public transportation:  mild difficulty

(Tr. 404-05.)

  **3.** **Kay Cogbill, M.D.**

On April 18, 2012, State agency nonexamining medical consultant Kay Cogbill, M.D., reviewed Ms. Mora's records, completed a Psychiatric Review Technique Form, and prepared a Mental Residual Functional Capacity Assessment.  (Tr. 444-47, 448-60.)  Dr. Cogbill noted that while Dr. Owens had assessed limitations in a range from marked to moderate, she found that Ms. Mora could shop, drive, go out alone, do chores, handle her finances, and attend church and ball games.  (Tr. 446.)  She assessed that Ms. Mora had mild limitations in her activities of daily living, and moderate limitations in her social functioning and in her ability to maintain concentration, persistence, or pace.  (Tr. 447, 458.)  Dr. Cogbill concluded that Ms. Mora was able to perform work where interpersonal contact was incidental to work performed, and she rated Ms. Mora's skill level as unskilled.  (Tr. 446-47.)

  **4.** **Scott R. Walker, M.D.**

On November 28, 2012, State agency nonexamining medical consultant Scott R. Walker, M.D., reviewed Ms. Mora's records at reconsideration.  (Tr. 99, 111.)  Dr. Walker noted that Ms. Mora had reported going several days without dressing and bathing, that she was able to prepare only simple meals and do light household chores with a reminder, that she no longer read for lack of concentration, that she was unable to pay attention for very long, and that she had

problems with memory, completing tasks, concentrating, understanding, following instructions and getting along with others. (*Id.*) Dr. Walker concluded that Ms. Mora's allegations were not entirely supported by the available evidence and were considered only partially credible. (*Id.*) Dr. Walker affirmed Dr. Cogbill's mental residual functional assessment and unskilled Psychiatric Review Technique Form. (*Id.*)

### 5. Martha R. Hand, LISW[8]

On January 31, 2013, Ms. Mora presented to Martha R. Hand, LISW, at Isleta Family Practice, for evaluation and treatment of her depression. (Tr. 617-21.) Ms. Mora reported that she had increased depression and anxiety over the past year, and had stopped working because she could no longer do her work because she was unable to concentrate and was always sad. (*Id.*) Ms. Mora stated she slept excessively, and spent many days in bed unable to cook and clean. (*Id.*) LISW Hand diagnosed Ms. Mora with adjustment disorder with mixed anxiety and depressed mood. (Tr. 619.) LISW Hand recommended Ms. Mora return in two weeks for follow-up. (*Id.*)

Ms. Mora followed up with LISW Hand for six more counseling sessions between February 28, 2013 and May 9, 2013. (Tr. 599-601, 602-04, 605-07, 608-10, 611-13, 614-16.) Her response to treatment vacillated between good and fair. (*Id.*)

### 6. Deborah Stanger, Nurse Practitioner[9]

On November 18, 2013, Nurse Practitioner Deborah Stanger prepared a Medical Assessment of Ability to Do Work-Related Activities (Mental) on behalf of Ms. Mora. (Tr. 590.) She assessed that Ms. Mora had *slight* limitations in her ability to (i) remember

---

[8] LISW Hand's records were provided to the Appeals Council on March 6, 2014, and made part of the record. (Tr. 5, 595) The ALJ did not have these records when she made her determination.

[9] Nurse Practitioner Stanger's records were provided to the Appeals Council on March 6, 2014, and made a part of the record. (Tr. 5, 588.) The ALJ did not have these records when she made her determination.

locations and work-like procedures; (ii) understand and remember very short and simple instructions; (iii) carry out very short and simple instructions; (iv) sustain an ordinary routine without special supervision; (v) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and (vi) be aware of normal hazards and take adequate precautions. (Tr. 589-90.) NP Stanger assessed that Ms. Mora had *moderate* limitations in her ability to (i) understand and remember detailed instructions; (ii) carry out detailed instructions; (iii) perform activities within a schedule, maintain regular attendance and be punctual with customary tolerance; and (iv) travel in unfamiliar places or use public transportation. (*Id*.) Finally, NP Stanger assessed that Ms. Mora had *marked* limitations in her ability to (i) maintain attention and concentration for extended periods of time; (ii) work in coordination with/or proximity to others without being distracted by them; (iii) make simple work-related decisions; (iv) complete a normal workday and workweek without interruptions from psychological based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods; (v) interact appropriately with the general public; (vi) accept instructions and response appropriately to criticism from supervisors; (vii) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and (viii) respond appropriately to change in the work place. (*Id*.)

NP Stanger also prepared an Assessment of Adaptation to Temperament Characteristics Required by Jobs. (Tr. 591.) She assessed that Ms. Mora should avoid (i) performing a variety of duties; (ii) performing effectively under stress; (iii) dealing with people; (iv) making judgments and decisions; (v) attaining precise set limits, tolerances, and standards; (vi) influencing people in their opinions, attitudes and judgments; and (vii) directing, controlling or planning activities of others. (*Id.*)

Finally, NP Stanger completed forms related to Listing 12.04 Affective Disorders and Listing 12.06 Anxiety-Related Disorders.  (Tr. 592-93); *see* 20 C.F.R. pt. 404, subpt. P. app. 1.  She determined that Ms. Mora met the required level of severity for each of these disorders because she had medically documented findings for both that resulted in marked difficulties in maintaining social functioning and marked difficulties in maintaining concentration, persistence, or pace.  (*Id.*)

### B.  Evaluating Opinion Evidence

Ms. Mora argues that the ALJ failed to accord proper weight to the consultative examination by Dr. John Owen as required by SSR 96-6p.[10]  (Doc. 18 at 12.)  She further argues that the ALJ improperly substituted her own opinion for that of Dr. Owen.  (*Id.* at 15.)  The Commissioner argues that giving little weight to Dr. Owen's opinion was reasonable given his findings, and that the ALJ properly accorded great weight to State agency nonexamining medical consultant Kay Cogbill, M.D.  (Doc. 22 at 9.)  The Court disagrees.

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional."  *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (internal citation omitted).  "An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion."  *Id.* (citing *Goatcher v. United States Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995)).[11]  An ALJ is required to given controlling weight to the opinion of a treating physician if is it supported by medically acceptable clinical

---

[10] Ms. Mora's reliance on SSR 96-6p is misplaced.  Social Security Ruling 96-6p addresses policy regarding the findings by State agency *nonexamining* sources.  See SSR 96-6p, 1996 WL 374180.  Dr. Owen is an examining consultant.  *Id.* at *1, n. 1.

[11] These factors include the examining relationship, treatment relationship, length and frequency of examinations, the degree to which the opinion is supported by relevant evidence, the opinion's consistency with the record as a whole, and whether the opinion is that of a specialist.  *See* 20 C.F.R. §§ 404.1527(c)(2)-(6) and 416.927(c)(2)-(6).

and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Id.* Generally the opinion of a treating physician is given more weight than that of an examining consultant, and the opinion of a non-examining consultant is given the least weight of all. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). "If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it." *Hamlin*, 365 F.3d at 1215. "An opinion found to be an examining rather than treating medical-source opinion may be dismissed or discounted . . . but that must be based on an evaluation of all of the factors set out in the cited regulations and the ALJ must 'provide specific, legitimate reasons for rejecting it.'" *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (quoting *Doyal v. Barnhart*, 331 F.3d 758, 764 ((10th Cir. 2003)).

Here, the ALJ considered four medical opinions related to Ms. Mora's mental status.[12] Dr. Sullivan saw Ms. Mora twice and opined that she was not disabled. (Tr. 395-96, 585-86.) The ALJ accorded his opinion some weight, and explained that the short duration of their treatment relationship precluded her from assigning greater weight to his opinion. (Tr. 37.) Dr. Owen examined Ms. Mora once, and opined that Ms. Mora had moderate and marked limitations in her abilities to sustain concentration, persist in tasks, and to interact socially. (Tr. 404-05.) The ALJ accorded his opinion little weight "in light of his own mental status examination and Ms. Mora's performance on the Mini-Mental State Examination." (Tr. 37.) Finally, Drs. Cogbill and Walker were State agency nonexamining medical consultants who did not examine Ms. Mora, but reviewed her records. (Tr. 99, 111, 444-47, 448-60.) Dr. Cogbill found that Ms. Mora had moderate limitations in her ability to maintain social functioning and in her ability to maintain concentration, persistence, or pace, but that she was capable of unskilled work. (Tr. 446-47, 458.) Dr. Walker affirmed Dr. Cogbill's assessments. (Tr. 99, 111.) The

---

[12] The ALJ did not have LISW Hand's and NP Stanger's records when she made her determination.

ALJ accorded great weight to their opinions, but determined that only the limitations regarding Ms. Mora's social interactions were consistent with Ms. Mora's adult function reports and testimony. (Tr. 38.)

### 1.     The ALJ Erred In Evaluating the Opinion Evidence

The ALJ erred in evaluating the opinion evidence. First, the ALJ accorded some weight to Dr. Sullivan's opinion despite the fact that his sole opinion was on an issue reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d) and 416.927(d) (explaining that the Commissioner is responsible for making a determination about whether a claimant is disabled). More significantly, the ALJ did so even though Dr. Sullivan failed to provide any objective evidence to support his conclusion.[13]  Although Dr. Sullivan's treatment relationship with Ms. Mora may have entitled his opinion to some deference, "[a] case cannot be decided in reliance on a medical opinion without some reasonable support for the opinion." SSR 96-2p, 1996 WL 374188, at *1. Here, there was no reasonable support for Dr. Sullivan's opinion, and the ALJ failed to provide an explanation for the weight she accorded Dr. Sullivan's opinion. *See* SSR 96-2p, WL 374188, at *5 (explaining that 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) require an ALJ must always give good reasons for the weight given to a treating source's medical opinion).

Second, the ALJ failed to properly evaluate Dr. Owen's opinion and substituted her own judgment in rejecting it. "An opinion found to be an examining rather than treating medical-source opinion may be dismissed or discounted . . . but that must be based on an evaluation of all of the factors set out in the cited regulations and the ALJ must 'provide specific, legitimate reasons for rejecting it.'" *Chapo,* 682 F.3d at 1291. Here, the ALJ did not evaluate Dr. Owen's

---

[13] Dr. Sullivan's subjective explanation for Ms. Mora not being disabled was that he believed Ms. Mora had made bad choices in her life, that she was in search of a "magic bullet" to make her better, and that she found his impression, conclusions, and recommendations to be of no value.

opinion based on the factors set out in the regulations.[14]  This is error.  Moreover, it was error for the ALJ to discount Dr. Owen's opinion and substitute it with her own judgment.  In her determination, the ALJ substituted her judgment for Dr. Owen's when she implicitly concluded that Dr. Owen's findings on Ms. Mora's mental status exam and Ms. Mora's performance on the Mini-Mental State Examination could not have resulted in Dr. Owen's opinion that Ms. Mora had several moderate and marked limitations in her ability to sustain concentration, persist in tasks, and to socially interact.  (Tr. 37.)  This is error.  "An ALJ may not substitute [her] own opinion for that of a claimant's doctor."  *Miller v. Chater*, 99 F.3d 972, 977 (10th Cir. 1996) (citations omitted.)  Further, if the ALJ found Dr. Owen's report internally inconsistent, rather than discounting it, she had a duty to develop the record by recontacting Dr. Owen for an explanation, which she did not do.  *See* 20 C.F.R. §§ 404.1519p(b), 416.919p(b); *see also Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008) (finding the ALJ had a duty to recontact medical sources for additional information when the record evidence is inadequate to determine whether the claimant is disabled even when claimant is represented by counsel).

Finally, the ALJ failed to provide an explanation for the great weight she accorded the State agency nonexamining medical consultant opinions.  The regulations explain that the opinions of State agency nonexamining medical consultants must be evaluated using the relevant factors found in 20 C.F.R. §§ 404.1527(a) - (d) and 416.927(a) - (d).[15]  *See* 20 C.F.R. §§ 404.1527(e)(2)(ii) and 416.927(e)(2)(ii).  The regulations also state that

> [u]nless a treating source's opinion is given controlling weight, the administrative law judge *must explain* in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do

---

[14] *See* fn. 11, *supra; see also*, 20 C.F.R. §§ 404.1597(c)(1) and 416.927(c)(1) (explaining that more weight is generally given to the opinion of a source who has examined a claimant than to the opinion of a source who has not examined a claimant).

[15] *See* fn. 11, *supra*.

>for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

*Id*. (emphasis added); *see also* SSR 96-6p, 1996 WL 374180, at *2 (instructing ALJs that they must explain the weight given to nonexamining sources). The Commissioner contends that when the medical evidence does not conflict with an ALJ's conclusion, the need for an express analysis is weakened and the ALJ was not required to specifically discuss the factors in weighing the State agency nonexamining medical consultant opinions. (Doc. 22 at 10.) However, the medical record evidence here *does* conflict with the ALJ's conclusion. Dr. Cogbill assessed Ms. Mora's mental limitations as somewhat less severe than Dr. Owen. (Tr. 404-05, 458.) The ALJ in turn assessed Ms. Mora's mental limitations as even less severe than Dr. Cogbill. (Tr. 38.) Further, the ALJ provided no analysis to explain her decision in light of the conflict. Instead, she stated, without more, that she accorded great weight to Drs. Cogbill and Walker. (*Id.*) This is insufficient.

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Here, the ALJ failed to apply the correct legal standards in evaluating the opinion evidence. This is reversible error.

### 2. The ALJ's Error Is Not Harmless

The ALJ's failure to properly evaluate the medical opinion evidence is not harmless error. The Commissioner argues the ALJ acknowledged that Ms. Mora required some accommodation in the work place for her mental impairment and reasonably limited her to simple decisions and no contact with the general public. (Doc. 22 at 5.) However, Dr. Owen assessed Ms. Mora with moderate and marked mental limitations in her ability to sustain

concentration and persist on tasks. (Tr. 404-05.) Further, Dr. Cogbill assessed Ms. Mora with moderate limitations in her ability to maintain concentration, persistence, and pace. (Tr. 458.) "A moderate impairment [is] not the same as no impairment at all," and requires the ALJ to express those limitations in terms of work-related functions in her RFC. *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007); *Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2014.) Here, the ALJ's RFC assessment does include any limitation in terms of work-related functions that address Ms. Mora's limited ability to sustain concentration and persist on tasks. See SSR 96-8p, 1996 WL 374184, at *6 (providing descriptions of work-related mental activities generally required by competitive, remunerative work).

Additionally, the mental health records submitted to the Appeals Council and made part of the record also support greater mental limitations than the ALJ assessed. The Commissioner argues that the additional records do not show any relevant worsening of Ms. Mora's mental impairment. (Doc. 22 at 12.) However, even assuming *arguendo* that the new records did not show any worsening of Ms. Mora's mental impairment, they nonetheless support Dr. Owen's and Dr. Cogbill's findings regarding Ms. Mora's limitations in her ability to maintain concentration, persistence, and pace, and her ability to socially interact.[16]

The Court applies harmless error where the Court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733-34 (10th Cir. 2005). That is not the case here. The ALJ's failure to properly evaluate the opinion evidence is not harmless.

---

[16] NP Stanger assessed Ms. Mora with moderate and marked limitations in her ability to sustain concentration and persistence, and marked limitations in her ability to socially interact. (Tr. 589-90.)

## C. Remaining Issues.

The Court will not address Ms. Mora's remaining claims of error because they may be affected by the ALJ's treatment of this case on remand. *Wilson v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## IV. Conclusion

For the reasons stated above, Ms. Mora's Motion to Reverse or Remand for Rehearing is **GRANTED.** This matter is remanded for further proceedings consistent with the Court's findings.

_____
**KIRTAN KHALSA**
**United States Magistrate Judge,**
**Presiding by Consent**